## GEORGE H. DAVIES *vs.* JAMES BURNS & others.

An officer of the customs of the United States, who finds smuggled goods, while assisting the inspectors who have charge of a vessel, in examining the passengers and their luggage, although not in discharge of a specific duty assigned to him, cannot maintain an action to recover a reward offered by the owners of the vessel to any person giving information to their agent or officers of any goods smuggled or concealed, or intended to be smuggled therefrom.

CONTRACT to recover the amount of a reward offered on the 1st of January 1854, by the owners of the British and North American Royal Mail Steam Packet Company, for information to the agent or officers of their ships, of goods smuggled or concealed, or intended to be smuggled therefrom. The terms of the offer are copied in the opinion.

The following facts were agreed in the superior court : Prior to the offer of the reward, ships of the defendants had been

seized by the collector of customs at Boston in two instances, on the allegation that goods of the value of more than $400 subject to duty, had been smuggled and landed, without a permit, from on board of them, and upon petition of the defendants by their agent, forfeiture of the vessel was in each instance remitted by the secretary of the treasury upon payment of a fine and costs. Soon after, the agent of the defendants represented to the collector that he was authorized by the defendants to offer a reward for the detection of smuggling, and suggested that, if such reward was offered, and they used all the means in their power to prevent and detect smuggling, and disclosed it when detected, it ought to be considered in regard to further seizures of the ships. The collector replied that if the defendants took such extra precautions it would be considered, so far as consistent with official duty; and thereupon a printed handbill, offering the reward, was posted up in various places, where the plaintiff saw and read them. These precautions were favorably considered at the custom-house; and though afterwards several acts of smuggling were detected, including those hereinafter named, no seizure was afterwards made of the defendants' ships.

On the 12th of May 1854, the Canada, one of the defendants' ships, arrived at her wharf in East Boston, in the night time. The plaintiff, who was a day inspector duly appointed under the general laws regulating such officers, was not assigned to this ship at that time, four other inspectors having been so assigned, which was the complement required. The plaintiff at that time was assigned as a day inspector to another vessel. At this time, it was no part of the ordinary official duty of day inspectors to take charge of vessels in the night time, or to give information of smuggling to the agent or officers of the defendants' ships; and there were no treasury regulations permitting passengers to land without a permit; but for the accommodation of the defendants and their passengers the collector allowed passengers to land, before entry at the custom-house, with their luggage, without a permit, provided such luggage contained no dutiable goods. The plaintiff went on board of the Canada

upon her arrival, and his attention was attracted by the conduct of three of the passengers, whom he examined, and found concealed upon their persons and in their luggage a quantity of dutiable goods, which were not entered upon the ship's manifest, and of the value of more than $400. These goods were secured until the next day, when they were seized by the chief inspector assigned to the ship, and the persons who had concealed them were arrested and afterwards tried and convicted for smuggling, and the goods forfeited. The plaintiff was a witness at the various trials, and received no share of the proceeds of the goods as informer.

In making these examinations and in stopping the luggage, the plaintiff acted with all the authority of an inspector of customs, being voluntarily present, and acting with a view to the reward offered by the defendants. The next morning, and before any legal process had issued against the goods or passengers, he gave information to the defendants' agent of the facts, and informed him that he should claim the reward in each case, and showed to him the goods; and subsequently he made a formal demand therefor in writing.

Upon these facts, judgment was ordered in the superior court for the defendants; and the plaintiff appealed to this court.

*W. J. Forsaith*, for the plaintiff. The agreement with the collector, and the offer of a reward, were for the benefit of the defendants, and they received this benefit, in the subsequent exemption of their ships from seizure. The Canada was subject to seizure and forfeiture, the seizure being discretionary with the collector. *St.* of U. S. of 1799, *c.* 22, § 50. *The Silver Spring*, Sprague's Decis. 551. The plaintiff did all the acts required by the offer of reward. He gave the information to the defendants, before any legal process had issued against the goods or passengers. The only question therefore is, whether the plaintiff is prevented from recovering the reward by reason of having been an inspector of customs.

The extent of the rule at common law is, that an officer ought not to take money for doing his duty. *England* v. *Davidson*, 3 Per. & Dav. 594; S. C. 11 Ad. & El. 856.

If the defendants contemplated some peculiar service or advantage, beyond what was derivable from the public duty of inspectors, it was a valid consideration for the offer. The present case comes within this exception. The plaintiff claims the reward for an extra, lawful and beneficial service rendered, which he was not bound or called upon to render by reason of his office. The inspector is not an officer with salary or emoluments, but is paid by the day. He is required to work by day and not by night.

*W. G. Russell,* for the defendants, cited *Pool* v. *Boston,* 5 Cush. 219; *Satterlee* v. *Jones,* 3 Duer, 102; *Bridge* v. *Cage,* Cro. Jac. 103; *Stotesbury* v. *Smith,* 2 Burr. 924; *Mitchell* v. *Vance,* 5 T. B. Monr. 530; *United States* v. *Jarvis,* Daveis, 274; *United States* v. *Sears,* 1 Gallis. 215; *Taylor* v. *United States,* 3 How. (U. S.) 197; *Barber* v. *Fox,* 2 Saund. 136, 137, *h; Sts.* of U. S. of 1790, *c.* 35, § 55; 1793, *c.* 8, § 27; 1799, *c.* 22, §§ 20, 53, 54, 70, 71, 73, 91; *c.* 23, § 2; 1816, *c.* 95, § 1; 1822, *c.* 107, § 17; 1839, *c.* 82, § 3; 1844, *c.* 105, § 7.

HOAR, J. It seems to us at least doubtful whether a just interpretation of the defendants' offer of a reward would extend it to the case on which the plaintiff relies. The offer is of a reward of $500 to " any person giving information to the agent or officers of the ships, of any goods, jewelry, or other merchandise, smuggled or concealed, or intended to be smuggled from on board the ships of the British and North American Royal Mail Steam Packet Company, on the establishment of the truth of the information." The purpose of this offer was manifestly to aid the company in avoiding the forfeiture or penalties to which their ships would be liable, by giving them information which would enable them to be active and serviceable in exposing the violation of law, delivering up to the revenue officers the property smuggled or intended to be smuggled, and handing over the offender to prosecution, and thereby to deserve and obtain for themselves the favorable consideration of the government. The language is, " smuggled or concealed, or intended to be smuggled from on board the ships." The reference would seem to be only to goods on board the ship, or which the revenue

officers had not discovered or detected. The plaintiff gave no information to the defendants until after the offence was known to the revenue officers in charge of the ship, and the offenders had been detected and arrested. This information was of no use or value to the defendants, and can hardly be considered as embraced in the letter of their contract. It certainly was not within its spirit.

But upon the broader ground of public policy the plaintiff cannot maintain his action. At the time he found the smuggled goods, he was an officer of the customs of the United States; and, although not in discharge of a specific duty assigned to him, was acting in the service of the government, as a volunteer, in assisting the inspectors who had charge of the steamer, and upon whom the duty of examining the passengers and their luggage devolved. His only right to be present and interfere with the passengers at all was by virtue of his official position. He acted as revenue officer; and so acting, it was his duty to detect, if possible, and expose any violation of the revenue laws, without other compensation than that which attached to his office. It might be for the interest of the government that information of what he had discovered or seized should not be given to the owners of the vessel, or their agents. It would do the defendants no good to give them information of the facts after all his duties to the government were performed.

The case is therefore clearly within the principles of the decision in *Pool* v. *Boston*, 5 Cush. 219, and cases there cited. It is against public policy to allow a man to recover a reward for doing his duty as a public officer; and upon the facts agreed there must be                   *Judgment for the defendants.*